## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BREEZE SMOKE LLC,

     Plaintiff,

vs.

NEW WAVE ENTERPRISE LLC,

     Defendant.

CASE NO.

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Breeze Smoke LLC ("Breeze Smoke"), by its undersigned attorneys Honigman LLP, for its Complaint against Defendant New Wave Enterprise LLC, ("Defendant" or "New Wave") alleges as follows:

## NATURE OF THE CASE

1.    Breeze Smoke is a leading manufacturer, distributor, and seller of electronic nicotine delivery systems ("ENDS"), or vaping products throughout the United States. To ensure its brand is protected, Breeze Smoke has applied for and received significant intellectual property protection on its goods, including trademarks for use of the term "Breeze," in connection with its ENDS or vaping products. Unfortunately, due to the popularity of Breeze Smoke's products, along with its reputation for delivering products of the highest quality to its consumers,

57456545.1

Breeze Smoke is often the target of infringers – forcing Breeze Smoke to bring numerous successful infringement claims against these infringers.

2.      New Wave is simply the latest infringer. This is not Breeze Smoke's first encounter with New Wave either. Previously, Breeze Smoke successfully stopped New Wave from infringing on Breeze Smoke's several existing federal trademark registrations by opposing New Wave's U.S. Trademark Application No. 90/306,932 in the Trademark Trial and Appeal Board ("TTAB"). New Wave was forced to amend the goods claimed in its application (to only "hookah parts") – and to eliminate all goods related to those vaping products sold by Breeze Smoke. Apparently bitter about its prior loss, New Wave has retaliated by now baselessly seeking to cancel Breeze Smoke's existing federal trademarks[1], willfully infringing Breeze Smoke's legitimate trademark rights, and tortiously interfering with Breeze Smoke's business relationships.

3.      Thus, this is an action for willful and intentional trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §1051, *et seq.*, as well as related state and common law claims.  This is also a further action

---

[1] As explained in Paragraph 29 below, Breeze Smoke's trademarks have been upheld and enforced by federal courts, including in this district.

for tortious interference with business relationship and/or expectancy caused by New Wave's baseless cease and desist letters targeting Breeze Smoke's customers (the "Customer Demand Letter"). Finally, this is an action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, in which Breeze Smoke seeks a declaration that its trademarks BREEZE SMOKE, BREEZE PLUS and BREEZE PRO, registered in the United States Patent and Trademark Office under Registration Nos. 6,770,534 (BREEZE PLUS), 6,992,438 (BREEZE PRO), 6,976,563 (BREEZE SMOKE) (the "BREEZE Registrations") do not infringe New Wave's purported trademark rights in its C-BREEZE trademark, which is at issue in the pending cancellation proceeding *New Wave Enterprise LLC v. Breeze Smoke LLC*, Proceeding No. 92085366, currently at the TTAB (the "BREEZE Cancellation Action").

## **PARTIES, JURISDICTION AND VENUE**

4.      Plaintiff Breeze Smoke is a limited liability company organized and existing under the laws of the State of Michigan, with its principal place of business at 1471 E. Nine Mile Rd., Unit 200, Hazel Park, MI 48030.

5.      Upon information and belief, Defendant New Wave Enterprise LLC is organized and existing under the laws of the State of New Jersey with its principal place of business at 2605 South Broad Street, Hamilton, New Jersey 08610.

57456545.1

6.     Upon information and belief, New Wave is in the business of marketing, advertising, promoting, distributing, offering, and selling hookah products as well as goods related to electronic cigarettes, including disposable vaping devices.

7.     There is personal jurisdiction over New Wave because New Wave has engaged in substantial and systematic commercial activities with individuals and entities located in this State, has offered and/or sold goods and services within this State in the ordinary course of trade, and otherwise has constitutionally sufficient contacts with this State so as to make personal jurisdiction proper in this Court. Specifically:

     a.  First, upon information and belief, New Wave uses an infringing mark in connection with operating an online retail website for the sale and offering for sale of infringing goods and services to customers in this State, at least in part, through **thecbreeze.com**. This website is accessible to individuals in Michigan, where individuals are able to add products to a shopping cart and purchase products.

     b.  Second, upon information and belief, New Wave has retailers in Michigan who sell the infringing product within this State.

    c.   Third, New Wave has targeted Breeze Smoke, a Michigan based company, who New Wave knows is domiciled in Michigan by initiating the BREEZE Cancellation Action and intentionally infringing on intellectual property rights that it knew were owned by Breeze Smoke.

    d.   Fourth, New Wave has targeted Breeze Smoke's Michigan retailers by sending the Customer Demand Letter to them, which threatens trademark infringement liability if they continue selling Breeze Smoke products. These threats are New Wave's malicious attempt to cause harm to Breeze Smoke (a Michigan company) and to Breeze Smoke's Michigan customers.

8.    The Court has subject matter jurisdiction over this civil action. As to the Lanham Act Claims (Counts I and II), this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338. This Court also has subject matter jurisdiction over the state law claims (Counts III through V) pursuant to 28 U.S.C. § 1367 as the state law claims are so related to the other claims in this lawsuit such that they form part of the same case or controversy under Article III of the United States Constitution.  Finally, as to the Declaratory Judgment Count (Count VI), this Court has subject matter jurisdiction pursuant to the Declaratory Judgment Act, 28

U.S.C. §§ 2201 and 2202. Namely, an actual controversy exists between the parties as New Wave initiated a cancellation action at the TTAB seeking to cancel Breeze Smoke's BREEZE Registrations.

9.     Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Breeze Smoke's claims occurred in this District as Breeze Smoke and its intellectual property are located in this District, Breeze Smoke offers its BREEZE-branded goods and services in this District, and Breeze Smoke's customers who received the Customer Demand Letter are in this District.  New Wave expressly aimed its infringing activities at this District, where Breeze Smoke is located and where New Wave knew harm was likely to be suffered.

## FACTUAL BACKGROUND

### *Breeze Smoke's BREEZE Marks*

10.     Breeze Smoke entered the vape market with a commitment to distinguish itself from other vape manufacturers, by offering high-quality and affordable products to consumers.

11.     Fueled by a passion for the vaping industry and its overall desire for excellence, Breeze Smoke was able to, in short time, become a leading player in the vape market.

57456545.1

12.     At the heart of its success is Breeze Smoke's vaping business, which includes the manufacturing and selling of a variety of vaping products, including disposable electronic vaping devices under marks consisting of or containing the term "BREEZE."

13.     By itself and through its predecessors in interest, Breeze Smoke has offered and sold certain vaping products in connection with its BREEZE marks since at least as early as April 2014.

14.     Examples showing Breeze Smoke's use of its BREEZE marks are shown below:

   

57456545.1






15.     In addition to its widespread and continuous use of the BREEZE marks, Breeze Smoke owns several United States Trademark Registrations for its BREEZE marks, as set forth on the following chart:

8

| | Mark | Reg. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 1 | BREEZE PLUS | 6,770,534 | Filed: October 10, 2020<br><br>Registered: June 28, 2022<br><br>First Use Date: at least as early as March 1, 2020 | Class 34:  Disposable Electronic Cigarettes |
| 2 | BREEZE | 6,296,005 | Filed: June 6, 2019<br><br>Registered: March 16, 2021<br><br>First Use Date: at least as early as April 6, 2020 | Class 25:  Beanies; hats; hooded sweatshirts; long-sleeved shirts; shirts; sweaters; tank tops; graphic T-shirts; short-sleeved or long-sleeved T-shirts; sweat shirts; T-shirts; tee shirts; woolly hats |
| 3 | BR≋ZE | 6,296,004 | Filed: June 6, 2019<br><br>Registered: March 16, 2021<br><br>First Use Date: at least as early as April 6, 2020 | Class 25: Beanies; hats; hooded sweatshirts; long-sleeved shirts; shirts; sweaters; tank tops; graphic T-shirts; short-sleeved or long-sleeved T-shirts; sweat shirts; T-shirts; tee shirts; woolly hats |

9

| | Mark | Reg. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 4 | BREEZE SMOKE | 6,976,563 | Filed: June 20, 2020<br><br>Registered: February 14, 2023<br><br>First Use Date: at least as early as March 1, 2020 | Class 34:  Disposable Electronic Cigarettes |
| 5 | BREEZE PRO | 6,992,438 | Filed: March 2, 2021<br><br>Registered: February 28, 2023<br><br>First Use Date: at least as early as August 18, 2021 | Class 34:  Disposable Electronic Cigarettes |

16.     Copies of the foregoing United States Trademark Registrations and accompanying Trademark Status & Document Retrieval ("TSDR") records reflecting their current status are attached hereto as **Exhibit A** and incorporated herein by reference.

17.     Breeze Smoke also owns numerous pending United States Trademark Applications for its BREEZE marks, as set forth on the below chart.

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 1 | BREEZE SMOKE | 97/697,754 | Filed: November 30, 2022 | Class 34: Pre-rolled hemp cones and hemp wraps for smoking, all of the foregoing containing CBD |

|  | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
|  |  |  |  | derived from natural, organic hemp with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis. |
| 2 | BREEZE PALM | 90/650,997 | Filed: April 16, 2021<br><br>Notice of Allowance Issued: November 1, 2022 | Class 34:  cigarette wraps; cigarette rolling papers; wraps in the nature of tobacco wraps; tobacco wraps; pre-rolled smoking cones; rolling paper cones |
| 3 | BREEZE PRIME | 97/839842 | Filed: March 15, 2023 | Class 34:  Disposable Electronic Cigarettes |
| 4 | BREEZE | 90/256,675 | Filed: October 15, 2020 | Class 34:  Ashtrays for smokers; Lighters for smokers; Tobacco grinders |
| 5 | BREEZE | 90/292,552 | Filed: November 2, 2020 | Class 14:  Ornamental lapel pins<br><br>Class 16:  Decals; Posters; Stickers; Plastic food storage bags for household use<br><br>Class 18:  Handbags; Wallets; Backpacks; Book bags; Sports bags; All- |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | purpose reusable carrying bags<br><br>Class 21:  Containers for household use; Insulating sleeve holders for beverage cans; Plastic storage containers for domestic use; Plastic storage containers for household use; Portable coolers, non-electric<br><br>Class 34:  Cigarette rolling papers; Smokers' rolling trays |
| 6 | **BREEZE** | 90/292,558 | Filed: November 2, 2020 | Class 14:  Ornamental lapel pins<br><br>Class 16:  Decals; Posters; Stickers; Plastic food storage bags for household use<br><br>Class 18:  Handbags; Wallets; Backpacks; Book bags; Sports bags; All-purpose reusable carrying bags<br><br>Class 21:  Containers for household use; Insulating sleeve holders for beverage cans; Plastic storage containers for domestic use; Plastic storage containers |

12

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | for household use; Portable coolers, non-electric<br><br>Class 34:  Cigarette rolling papers; Smokers' rolling trays |
| 7 | BREEZE | 90/292,573 | Filed: November 2, 2020 | Class 7:  Vacuum packaging machines<br><br>Class 30:  Candy; Candy bars<br><br>Class 32:  Bottled water |
| 8 | BR≈≈ZE | 90/292,568 | Filed: November 2, 2020 | Class 7:  Vacuum packaging machines<br><br>Class 30:  Candy; Candy bars<br><br>Class 32:  Bottled water |
| 9 | BREEZE | 90/292,582 | Filed: November 2, 2020 | Class 3:  Electronic cigarette liquid comprised of essential oils; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 5:  Plant extracts for pharmaceutical purposes, namely, for the treatment of |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | nausea, anxiety, pain, glaucoma, seizures, multiple sclerosis and Crohn's Disease; to the extent any of the foregoing involves cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis |
| | | | | Class 34:  Electronic cigarette liquids comprised of flavoring in liquid form, other than essential oils, used to refill electronic cigarette cartridges; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis; smoking pipes; smoking pipe cleaners; electronic smoking pipes; oral vaporizers for smokers |
| 10 | BR≋ZE | 90/292,579 | Filed: November 2, 2020 | Class 3:  Electronic cigarette liquid comprised of essential oils; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | than 0.3% on a dry weight basis<br><br>Class 5:  Plant extracts for pharmaceutical purposes, namely, for the treatment of nausea, anxiety, pain, glaucoma, seizures, multiple sclerosis and Crohn's Disease; to the extent any of the foregoing involves cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 34:  Electronic cigarette liquids comprised of flavoring in liquid form, other than essential oils, used to refill electronic cigarette cartridges; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis; smoking pipes; smoking pipe cleaners; electronic smoking pipes; oral vaporizers for smokers |
| 11 | BREEZE LIFE | 97/926,736 | Filed: | Class 34:  Battery performance monitors sold |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | May 9, 2023 | as a component of electronic disposable cigarettes |
| 12 | **BREEZE** — S M O K E — | 97/900,128 | Filed: April 21, 2023 | Class 34:  Disposable electronic cigarettes |
| 13 | BREEZE ELITE | 98/146,073 | Filed: August 23, 2023 | Class 34: Electronic disposable cigarettes |
| 14 | BREEZE POD | 98/427,390 | Filed: February 29, 2024 | Class 34: Electronic signatures |
| 15 | BREEZE PLUS DISCREET | 98/473,440 | Filed: March 28, 2024 | Class 34: Electronic cigarettes |
| 16 | BREEZE PRO DISCREET | 98/473,436 | Filed: March 28, 2024 | Class 34: Electronic cigarettes |
| 17 | **BREEZE**PRO | 98/531,707 | Filed: May 2, 2024 | Class 34: Electronic cigarettes |
| 18 | BREEZE ODOR | 97/010,691 | Filed: September 3, 2021 | Class 4: Candles |

18.    Copies of the foregoing applications, along with printouts of the accompanying TSDR records reflecting their status, are attached hereto as **Exhibit B** and incorporated herein by reference.

19.    Breeze Smoke also owns Michigan State Trademark Registrations 802,511,431 and 802,511,553 for the mark BREEZE. The Michigan BREEZE

57456545.1

registrations were registered on August 13, 2020 and assert use in commerce since at least as early as February 4, 2020.

20.    Breeze Smoke also owns Florida State Trademark Registrations T21000000916 and T21000000917 for BREEZE LABS. The Florida BREEZE LABS registrations assert use in commerce since at least as early as December 31, 2014.

21.    Collectively, Breeze Smoke's foregoing BREEZE registrations and applications and its longstanding common law rights in the BREEZE marks shall be referred to herein as the "BREEZE Marks."

22.    Collectively, the products and services in connection with which Breeze Smoke uses its BREEZE Marks, including the goods and services identified in the foregoing applications and registrations shall be referred to herein as the "BREEZE Goods and Services."

23.    The BREEZE Goods and Services sold in connection with the BREEZE Marks are promoted, offered and sold through online retail platforms as well as at a substantial number of brick-and-mortar locations throughout Michigan and the United States.

24.    Breeze Smoke has spent significant time, effort, and resources establishing its BREEZE Marks in the minds of its customers and the public via

advertisements and promotions—including through online advertising and promotion—as representative of Breeze Smoke's BREEZE Goods and Services, including but not limited to, its high quality tobacco-related and vaping products.

25.    Breeze Smoke has generated substantial revenue through its offer and sale of the BREEZE Goods and Services.

26.    As a result of Breeze Smoke's continuous use, extensive sales, advertising, and promotion of its BREEZE Marks, the BREEZE Marks enjoy widespread recognition and an excellent reputation, and are recognized by the public as emanating exclusively from Breeze Smoke and representative of Breeze Smoke's high quality BREEZE Goods and Services.   The BREEZE Marks represent substantial and valuable goodwill to Breeze Smoke's business and are intangible assets of substantial commercial value to Breeze Smoke

### *Breeze Smoke's Enforcement of its Intellectual Property Rights*

27.    Given the commercial success associated with the BREEZE Goods and Services, Breeze Smoke has achieved a high level of popularity and brand recognition within the vaping community.

28.    Unfortunately, due to its success, the BREEZE Marks are often times the target of infringers hoping to confuse consumers into believing their products have some affiliation with Breeze Smoke, when they do not.

29.     Breeze Smoke has previously successfully enforced its BREEZE Marks several times, including in the following federal actions:

a.  *Breeze Smoke LLC v. Jarjess, et. al*., Case No. 2:20-cv-13413-AJT-EAS (E.D. Mich.) (Breeze Smoke successfully obtained permanent injunctive relief against defendants).

b.  *Select Distributors, LLC et. al., v. Breeze Smoke LLC, et. al*., Case No. 5:20-cv-12944-JEL-EAS (E.D. Mich.) (Breeze Smoke successfully obtained permanent injunctive relief against defendant).

c.  *Breeze Smoke LLC v. Yatin Enterprises Inc., et. al*., Case No. 1:22-cv-01182 (W.D. Mich.) (Breeze Smoke successfully obtained permanent injunctive relief against defendants).

d.  *Breeze Smoke LLC v. World Wholesale Inc. et. al*., Case No. 2:23-cv-13266-JJCG-DRG (E.D. Mich.) (Breeze Smoke successfully obtained preliminary injunctive relief against defendants; case is pending).

### *Breeze Smoke's First Encounter with New Wave*

30.    This is not the first legal encounter between the parties.  Previously, Breeze Smoke successfully prevailed in a TTAB opposition against New Wave's C-BREEZE Application that limited New Wave's rights in its C-BREEZE mark.

31.    Specifically, in late-2022, Breeze Smoke learned from a trademark watch notice that New Wave owned an application for the mark C-BREEZE in the United States Patent and Trademark Office for "tobacco; hookah tobacco; and hookah parts, namely mouthpieces and hoses," Application Serial No. 90/306,932 (the "C-BREEZE Application").  Breeze Smoke extended the time to oppose New Wave's C-BREEZE Application.

32.    Breeze Smoke investigated the C-BREEZE Application and learned that New Wave sold "hookah mouthpieces and hoses" but not "tobacco" or "hookah tobacco."  Images of the specimen New Wave filed with the C-BREEZE Application as evidence of use of the C-BREEZE mark are below, showing use of the mark for "hookah hoses" (but not "tobacco" or "hookah tobacco," as claimed):






33.   As a result of Breeze Smoke's investigation, on March 2, 2023, Breeze Smoke sent New Wave a letter requesting that New Wave delete "tobacco" and "hookah tobacco" from the C-BREEZE Application.  A true and correct copy of Breeze Smoke's March 2, 2023 letter is attached as **Exhibit C**, and incorporated by reference herein.

34.   New Wave's response ignored Breeze Smoke's significant intellectual property rights and failed to prove it had established trademark rights in the C-BREEZE mark for anything more than "hookah mouthpieces and hoses." Instead, New Wave threatened to sell its purported C-BREEZE mark to defendants in other litigations with Breeze Smoke and sought a monetary proposal from Breeze Smoke to prevent it from assisting other infringers. Seemingly, instead of protecting its purported intellectual property, New Wave was concerned only with obtaining an unearned monetary payment from Breeze Smoke.  A true and correct copy of New Wave's March 9, 2023 letter to Breeze Smoke is attached as **Exhibit D**, and incorporated by reference herein.

35.   Therefore, on March 28, 2023, Breeze Smoke initiated an opposition proceeding in the TTAB against New Wave's C-BREEZE Application (the "C-BREEZE Opposition").

36.    During the course of discovery in the C-BREEZE Opposition, New Wave admitted that it never sold "hookah tobacco," failed to identify any "tobacco" that it had sold, and admitted that it completely stopped using the C-BREEZE mark between early 2016-2019 with no sales of *any* products under the C-BREEZE mark during this time.  A true and correct copy of New Wave's discovery responses are included as exhibits to Breeze Smoke's November 30, 2023 Motion for Partial Summary Judgment attached hereto as **Exhibit E**, and incorporated by reference herein. **Exhibit E** at Ex. B at 3-4, Ex. D at 2, 4, Ex. E at 3.

37.    Breeze Smoke filed, and the TTAB granted, a Motion for Partial Summary Judgment requiring New Wave to delete "tobacco" and "hookah tobacco" from the C-BREEZE Application.

38.    After its loss at the TTAB, New Wave was finally, on February 13, 2024, able to register its C-BREEZE Application for the limited goods, "hookah parts, namely, mouthpieces and hoses," in class 34 and was assigned U.S. Trademark Registration No. 7,301,764 (the "C-BREEZE Registration").

*New Wave's Concerted Efforts To Hamper Breeze Smoke's Business*

39.    New Wave, in retaliation after losing in the C-BREEZE Opposition and having to limit its federal registration to just "hookah parts. . ." and deleting

23

"tobacco" and "hookah tobacco" from its C-BREEZE Application, began a concerted scheme to disrupt Breeze Smoke's business.

40.    First, on June 6, 2024, New Wave filed a baseless BREEZE Cancellation Action against the BREEZE Registrations.  A true and accurate copy of the Amended Petition for Cancellation that is the operative pleading in this proceeding is attached as **Exhibit F**.

41.    New Wave's BREEZE Cancellation Action features a number of misrepresentations belied by the very records it produced in the C-BREEZE Opposition proceedings, including:

  a.  New Wave repeatedly claims it has continuously used the C-BREEZE mark despite admitting ceasing all sales from early 2016–2019.  **Exhibit F** at 3 ¶ 5; and 5 ¶¶ 24, 25.

  b.  New Wave relies on this purported continuous use to falsely establish common law priority over Breeze Smoke and its BREEZE Registrations.  **Exhibit F** at 5 ¶ 25.

  c.  New Wave claims it has acquired common law rights in the C-BREEZE mark in connection with "e-cigarettes," though it produced no documents evidencing to support its claim of common law rights. **Exhibit F** at 4 ¶ 14; and 5 ¶ 25.

      d. New Wave conflates without support "e-cigarettes" with "e-hoses" and implies these goods are covered by its C-BREEZE registration. **Exhibit F** at 3 ¶ 9. However, "e-hoses" has not ever been a term of art in widespread use, there is no evidence to show that "e-cigarettes" are synonymous with "e-hoses", and "e-hoses" do not appear to be a type of goods available for purchase in the market.

42. The parties are currently litigating the BREEZE Cancellation Action in the TTAB.  Currently, the BREEZE Registrations are still active and have not been cancelled.

43. Second, New Wave sent the July 3, 2024 Customer Demand Letter with a copy of its initial BREEZE Cancellation Action pleading to Breeze Smoke's customers (some of which are in Michigan and this District). A true and accurate copy of the July 3, 2024 Customer Demand Letter is attached as **Exhibit G**.

44. The Customer Demand Letter contained a number of similar misrepresentations belied by the very records produced in the C-BREEZE Opposition, including:

      a. New Wave falsely claims it has been using the C-BREEZE mark in connection with "e-cigarettes" and related goods since 2014, despite

admitting that it ceased use from early 2016–2019. **Exhibit G** at 1 ¶ 2.

b. New Wave falsely claims it has acquired common law rights in the C-BREEZE mark in connection with "e-cigarettes," though it produced no documents in the C-BREEZE Opposition evidencing any such use is occurring. **Exhibit G** at 1 ¶ 1.

c. New Wave falsely claims its rights in the C-BREEZE mark are longstanding, although the mark was not in use for at least a three-year period. **Exhibit G** at 1 ¶ 2.

d. New Wave falsely claims the C-BREEZE mark represents substantial, valuable goodwill though, upon information and belief, any early use of the C-BREEZE mark was sporadic, token use in limited geographic locations. **Exhibit G** at 2 ¶ 2.

45.    Given the numerous falsehoods in New Wave's July 3, 2024 Customer Demand Letter, Breeze Smoke has been irreparably harmed as its reputation is being continuously tarnished by New Wave's lies to consumers and the public.

*New Wave's Willful Trademark Infringement*

46.     In furtherance of New Wave's concerted scheme to damage Breeze

Smoke, New Wave has also begun willfully infringing on Breeze Smoke's

established trademark rights.

47.     As described above, New Wave asserts in its Amended Petition for

Cancellation in the BREEZE Cancellation Action that it sells "e-cigarettes" in the

United States.

48.     Upon information and belief as described above, New Wave has not

continuously sold "e-cigarettes" or any products under the C-BREEZE mark since

January 2014.

49.     During the C-BREEZE Opposition, New Wave began warning Breeze

Smoke that it would begin promoting and selling vapes under the C-BREEZE mark.

An example of New Wave's threat that it would promote its "new vape C-BREEZE"

is below:

57456545.1



50.    In August 2024, Breeze Smoke became aware that New Wave has recently begun marketing, promoting, advertising, offering, distributing, and selling disposable vaping products using the mark C-BREEZE (the "Infringing Products").

51.Examples of these recently sold Infringing Products follow:

57456545.1



 

52.   New Wave is directly competing with Breeze Smoke in that it is marketing, promoting, advertising, offering, distributing and selling virtually identical or closely similar disposable vaping products to the same customers or the

29

same or similar classes of customers as Breeze Smoke under a confusingly similar mark, C-BREEZE, in a stylization that gives the appearance that the mark is simply BREEZE (not C-BREEZE), and using a product shape that Breeze Smoke uses for its BREEZE PRIME vaping product as seen below:

 

53.     Upon information and belief, New Wave recently secured the domain **thecbreeze.com** in December 2023, less than a month after Breeze Smoke filed its Partial Motion for Summary Judgment in the C-BREEZE Opposition, and began marketing, advertising, and selling vapes on its website https://thecbreeze.com/.

54.   Screenshots of New Wave's **thecbreeze.com** website that shows the same C-BREEZE stylization depicted on New Wave's Infringing Products in the upper left corner and offers vape products for purchase are below:





57456545.1

55.     Breeze Smoke has not licensed or otherwise authorized New Wave to use its highly valuable and well-established BREEZE Marks in any manner whatsoever.

56.     Upon information and belief, New Wave knew of Breeze Smoke's prior use of the BREEZE Marks and was well aware of the goodwill and market value of Breeze Smoke's BREEZE Marks and intentionally chose to use and to trade off the goodwill associated with the BREEZE Marks to suggest a false affiliation between Breeze Smoke and its goods and services on the one hand and New Wave and its goods and services on the other, to deliberately mislead and confuse customers about the source of the parties' respective goods, or to intentionally disrupt Breeze Smoke's legitimate business.

57.     Through its unauthorized and infringing uses of the BREEZE Marks, New Wave is deliberately and improperly capitalizing upon the goodwill that Breeze Smoke has built up in its BREEZE Marks.

58.     New Wave's unauthorized, unlawful, and intentional use of the BREEZE Marks has caused, and will continue to cause, a likelihood of confusion among consumers and potential consumers as to the source or origin of the Infringing Products and the sponsorship or endorsement of those goods and services by Breeze Smoke.

33

59.     As a result of New Wave's intentional misappropriation of the BREEZE Marks for use in connection with the Infringing Products, New Wave has caused, and will continue to cause, irreparable injury to Breeze Smoke and has substantially damaged the value of Breeze Smoke's BREEZE Marks.

60.     New Wave has unjustly enriched itself at Breeze Smoke's expense by displaying, marketing, advertising, promoting, distributing, offering to sell, and selling the Infringing Products.  Among the benefits that New Wave has gained from its unlawful and willful conduct are increased revenues from the sale of the Infringing Products.

61.     With every day that passes, New Wave's sale of the Infringing Products compounds the irreparable harm to Breeze Smoke.

### COUNT I
### FEDERAL TRADEMARK INFRINGEMENT OF A REGISTERED MARK
### (15 U.S.C. § 1114)

62.     Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

63.     Breeze Smoke owns valid and enforceable rights in the BREEZE Marks in connection with the goods and services it offers and sells in connection therewith by virtue of its extensive use, promotion, and advertisement of the marks, and has possessed such rights at all times material hereto.

34

64.    Breeze Smoke owns rights in its BREEZE Marks, including several valid registrations for its BREEZE Marks.   Specifically, Breeze Smoke owns federally registered trademark numbers 6,296,004 and 6,296,005 for the mark BREEZE, 6,770,534 for the mark BREEZE PLUS, 6,976,563 for the mark BREEZE SMOKE, and 6,992,438 for the mark BREEZE PRO.

65.    The foregoing registrations are prima facie evidence of the validity of the BREEZE Marks and of Breeze Smoke's ownership of the BREEZE Marks.

66.    Breeze Smoke's use of its BREEZE Marks in connection with tobacco-related and other vaping products predates any use by New Wave.

67.    New Wave knowingly and intentionally markets, promotes, advertises, distributes, offers to sell, and sells the Infringing Products.

68.    New Wave is selling and offering to sell the Infringing Products with full knowledge that consumers are likely to confuse them with the BREEZE Goods and Services.

69.    New Wave has been informed and is fully aware of Breeze Smoke's extensive prior use of the BREEZE Marks.

70.    Breeze Smoke has not authorized, licensed, or otherwise condoned or consented to New Wave's use of the BREEZE Marks.

71.     New Wave's marketing, promotion, advertising, offering for sale, and selling of Infringing Products are likely to confuse, mislead, and/or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of New Wave and Breeze Smoke, and/or New Wave's goods and services on the one hand and the BREEZE Goods and Services on the other, and is likely to cause such people to believe in error that New Wave's goods and services have been authorized, sponsored, approved, endorsed, or licensed by Breeze Smoke or that New Wave's is in some way affiliated with Breeze Smoke.

72.     Such confusion, deception or mistake has already occurred, and is likely to continue to occur, as a direct result of New Wave's displaying, advertising, promoting, offering of sale and selling of the Infringing Products.

73.     New Wave's actions constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

74.     Though New Wave had prior knowledge of Breeze Smoke and its BREEZE Marks and the BREEZE Goods and Services, and received notice from Breeze Smoke that it was infringing Breeze Smoke's BREEZE Marks, it began to and continue to intentionally infringe the BREEZE Marks.

75.     New Wave's actions described herein were knowing and intentional and thus render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

36

57456545.1

76.    New Wave's conduct has occurred in interstate commerce and substantially impacts interstate commerce.

77.    As a direct and proximate result of New Wave's conduct, Breeze Smoke has suffered damage to the valuable BREEZE Marks, as well as harm to its valuable goodwill and reputation.

78.    New Wave's conduct described herein will continue to cause irreparable damage to Breeze Smoke and confuse the public unless enjoined by this Court.

79.    An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

## COUNT II
## FEDERAL UNFAIR COMPETITION
## AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

80.    Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

81.    Breeze Smoke owns valid and enforceable rights in the BREEZE Marks in connection with the goods and services it offers and sells and has possessed such rights at all times material hereto.

37

82.     Breeze Smoke's use of the BREEZE Marks in connection with tobacco-related and other vaping products predates any use by New Wave.

83.     New Wave has knowingly and intentionally used and continues to use in commerce the BREEZE Marks in connection with the vaping and tobacco-related goods by advertising, promoting, distributing, and selling the Infringing Products.

84.     New Wave knowingly and intentionally sells the Infringing Products with full knowledge of Breeze Smoke's extensive prior use of the BREEZE Marks.

85.     Breeze Smoke has not authorized, licensed, or otherwise condoned or consented to New Wave's use of the BREEZE Marks.

86.     New Wave's marketing, promotion, advertising, distribution, offering for sale, and selling of the Infringing Products are likely to confuse, mislead, and/or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of New Wave and Breeze Smoke, and/or New Wave's goods and services on the one hand and the BREEZE Goods and Services on the other, and is likely to cause such people to believe in error that New Wave's goods have been authorized, sponsored, approved, endorsed, or licensed by Breeze Smoke or that New Wave is in some way affiliated with Breeze Smoke.

87.     Such confusion, deception, or mistake has already occurred, and is likely to continue to occur, as a direct result of New Wave's use of the BREEZE

Marks in connection with the display, advertising, promotion, offer of sale, and sale of the Infringing Products

88.     New Wave's actions constitute unfair competition, false designation of origin, false or misleading description of fact, and false or misleading representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

89.     Though New Wave had prior knowledge of Breeze Smoke and its BREEZE Marks and the BREEZE Goods and Services, and received notice from Breeze Smoke that it was infringing Breeze Smoke's BREEZE Marks, it continues to intentionally infringe the BREEZE Marks.

90.     New Wave's actions described herein were knowing and intentional and thus render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

91.     As a direct and proximate result of New Wave's conduct, Breeze Smoke has suffered damage to the valuable BREEZE Marks, as well as harm to its valuable goodwill and reputation.

92.     New Wave's conduct described herein will continue to cause irreparable damage to Breeze Smoke and confuse the public unless enjoined by this Court.

93.     An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

57456545.1

## COUNT III
## COMMON LAW UNFAIR COMPETITION

94.    Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

95.    New Wave was aware of Breeze Smoke's prior use of the BREEZE Marks and used the BREEZE Marks in disregard of Breeze Smoke's rights.

96.    New Wave's actions have resulted in the misappropriation of, and trading upon, Breeze Smoke's valuable goodwill and business reputation at Breeze Smoke's expense and at no expense to New Wave.  The effect of New Wave's misappropriation of the goodwill symbolized by the BREEZE Marks is likely to unjustly enrich New Wave, damage Breeze Smoke, and confuse and/or deceive the public.

97.    New Wave's actions constitute unfair competition with Breeze Smoke, which has caused and will continue to cause irreparable injury to Breeze Smoke's goodwill and reputation unless enjoined.

98.    An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

## COUNT IV
## UNJUST ENRICHMENT

99.    Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

40

100.   By misappropriating Breeze Smoke's valuable goodwill and reputation through the improper use of the BREEZE Marks, New Wave has been unjustly enriched to the material detriment of Breeze Smoke.

101.   New Wave is realizing profit and will continue to realize a profit from their improper use of the BREEZE Marks.

102.   New Wave's actions have directly and proximately caused irreparable harm to Breeze Smoke and its valuable goodwill and reputation, and will continue to harm Breeze Smoke unless enjoined.

103.   An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

104.   Breeze Smoke is entitled to compensatory damages in the form of restitution and such other and further relief as the Court deems equitable and just.

## COUNT V
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP AND/OR EXPECTANCY

105.   Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

106.   Breeze Smoke has developed and maintained business relationships with its customers that received New Wave's Customer Demand Letter.

107.   New Wave is aware of this relationship as New Wave targeted Breeze Smoke's customers by sending them the Customer Demand Letter on July 3, 2024. *See* **Exhibit G**.

108.   As a result of New Wave's Customer Demand Letter, New Wave has knowingly and intentionally interfered with the business relationship between Breeze Smoke and its customers who New Wave targeted.

109.   On information and belief, New Wave contacted and made statements to Breeze Smoke's customers to intentionally harm and slander the general goodwill and reputation of Breeze Smoke.

110.   On information and belief, New Wave did this while knowing its claims were baseless, namely because New Wave's purported common law rights are non-existent.

111.   The actions set forth in 109 and 110, above have proximately caused and will continue to cause injury to the goodwill and business reputation of Breeze Smoke.   Breeze Smoke has no adequate remedy at law that would completely compensate for the injury.   As a result, Breeze Smoke is entitled to an injunction restraining New Wave, its associates, agents, employees, and all persons acting in concert with New Wave, from further interfering with the business relationships of Breeze Smoke.

112.    Additionally, Breeze Smoke requests damages and a judgment against New Wave for tortious interference with its business relationships, and any other remedy which the Court deems just.

**COUNT VI**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF**
**NEW WAVE'S C-BREEZE MARKS AND NON-CANCELLATION BY THE**
**TTAB**

113.    Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

114.    On June 06, 2024, as amended, New Wave baselessly instituted the BREEZE Cancellation Action Proceeding No. 92085366 in the TTAB seeking to cancel Breeze Smoke's registrations 6,770,534 (BREEZE PLUS), 6,992,438 (BREEZE PRO), 6,976,563 (BREEZE SMOKE) falsely alleging priority based on its common law rights in C-BREEZE in connection with "e-cigarettes" from its purported continuous use of the mark since at least as early as January 2014 and relying on its first use of C-BREEZE in connection with the registered goods, "hookah parts, namely, mouthpieces and hoses" since at least as early as 2014.

115.    Notwithstanding New Wave's false assertions of common law rights and continuous use, New Wave has admitted that it ceased use of the C-BREEZE mark from early 2016-2019.

116.   Therefore, New Wave's C-BREEZE mark has not been in continuous use in connection with "e-cigarettes" products since January 2014.

117.   New Wave's C-BREEZE mark also has not been in continuous use with its registered goods "hookah parts, namely, mouthpieces and hoses," in Class 34 since 2014.

118.   Upon information and belief, any purported use of the C-BREEZE mark prior to present day is sporadic, token use that is limited to the geographic area in which the sale was made.

119.   The earliest date upon which New Wave can rely to establish priority in its C-BREEZE Registration is at least as early as November 2014 in U.S. Commerce and at least as early as June 2014 anywhere.

120.   Therefore, Breeze Smoke has priority over New Wave in use of its BREEZE Marks since at least as early as April 2014.

121.   As to New Wave's registered goods "hookah parts, namely, mouthpieces and hoses," in Class 34, the differences between Breeze Smoke's Goods and Services and "hookah parts, namely, mouthpieces and hoses" prevent any likelihood of confusion.

122.   Breeze Smoke has taken no action to intentionally associate itself or its business with New Wave or its business.

44

123.   Breeze Smoke's use and registration of its BREEZE Marks in connection with the BREEZE Goods and Services has not caused, and is not likely to cause, confusion, mistake or deception as to the source, origin, sponsorship, or approval of the BREEZE Goods and Services vis-à-vis New Wave or New Wave's C-BREEZE mark.

124.   Breeze Smoke's use of its BREEZE Marks does not violate any rights of New Wave, including any rights New Wave might have under Sections 32 or 43 of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) & 1125(c), or any state trademark infringement or unfair competition laws.

125.   Breeze Smoke is entitled to a declaration of non-infringement of New Wave's purported rights in its C-BREEZE mark because New Wave does not have priority against Breeze Smoke under 15 U.S.C. § 1057(c).

126.   Therefore, Breeze Smoke is further entitled to a declaration that the TTAB should not cancel the BREEZE Registrations or any other BREEZE Marks under 15 U.S.C. § 1064 and directing the TTAB to deny the BREEZE Cancellation Action.

### PRAYER FOR RELIEF

WHEREFORE, Breeze Smoke respectfully requests and prays that the Court:

1.   Declare that Breeze Smoke's BREEZE Marks do not infringe New Wave's purported rights in the C-BREEZE mark;

2.    Declare that the registrations of Breeze Smoke's BREEZE Marks shall not be cancelled and that the Trademark Trial and Appeal Board be directed to deny the BREEZE Cancellation Action Proceeding No. 92085366;

3.    Enter judgment in Breeze Smoke's favor and against New Wave on all counts of the Complaint;

4.    Determine that New Wave willfully violated the Lanham Act, that Breeze Smoke has been damaged by such violations, and that New Wave is liable to Breeze Smoke for such violations;

5.    Determine that New Wave has committed common law trademark infringement, that Breeze Smoke has been damaged by such infringement, and that New Wave is liable to Breeze Smoke for common law trademark infringement;

6.    Determine that New Wave has tortiously interfered with Breeze Smoke's business relationships/expectancy and award damages to Breeze Smoke;

7.    Determine that this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a);

8.    Under all claims for relief, issue a permanent injunction enjoining New Wave and any of its officers, employees, agents, successors and assigns, and all those in active concert and participation with New Wave, and each of them who receives notice directly or otherwise of such injunctions:

   a.   from using in any manner the BREEZE Marks and any variations thereof, or any other name, term, phrase, mark, design, device or symbol which so resembles or is similar to the BREEZE Marks so as to be likely to cause confusion, mistake or deception as to source, origin, sponsorship, approval, affiliation or the like on or in connection with disposable vaping products;

   b.   from further unlawfully trading upon and misappropriating the goodwill and reputation of Breeze Smoke and competing unfairly

46

with Breeze Smoke by advertising, marketing, offering for sale, or selling disposable vaping products;

c.  from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts; and

d.  from making any false or misleading descriptions of fact or false or misleading representations of fact in their commercial advertising or promotion about the nature, characteristics, or qualities of their products or related commercial activities.

9.  Order New Wave to deliver up for destruction all disposable vaping products, labels, signs, prints, packages, wrappers, receptacles, advertisements, or other materials in their possession, custody or control, and in the possession, custody or control of those in active concert or participation or otherwise in privity with them, which display or contain the BREEZE Marks, or any variations thereof, or which constitute and/or bear any other device, representation or statement in violation of the injunction herein requested by Breeze Smoke, and that New Wave be ordered to deliver up for destruction all means of making the same;

10. Order New Wave to file with the Court and serve on Breeze Smoke, within thirty (30) days after service on any of them of such injunction (or such extended period as the Court may direct), a report in writing and under oath, setting forth in detail the manner and form in which New Wave has complied with the injunction;

11. In accordance with 15 U.S.C. § 1118, order New Wave to deliver to Breeze Smoke, at New Wave's expense, for destruction or other disposition, all disposable vaping products, including, without limitation, all labels, packaging, signs, prints, advertisements, promotional, and other materials, incorporating, bearing, or displaying a trademark confusingly similar to the aforementioned trademarks of Breeze Smoke or which otherwise violate 15 U.S.C. §§ 1114 and 1125(a), in the possession, custody, or control of New Wave, as well as any reproduction, counterfeit, copy, or colorable imitation thereof, and all other materials or means of making the same;

57456545.1

12.    Order that New Wave account for and pay over to Breeze Smoke all gains, profits, and advantages derived from their violation of 15 U.S.C. §§ 1114 and 1125(a) and the common law due to its sale and offer to sell disposable vaping products, and also pay to Breeze Smoke the damages which Breeze Smoke has sustained by reason of such violations, together with legal interest from the date of accrual thereof;

13.    Because of the willful nature of said violations and pursuant to 15 U.S.C. § 1117(a), order that New Wave be required to pay over to Breeze Smoke enhanced damages;

14.    Order that New Wave be required to pay Breeze Smoke's reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a);

15.    Award interest, including pre-judgment interest on the foregoing sums;

16.    Award Breeze Smoke an appropriate amount of money to undertake corrective advertising;

17.    Award Breeze Smoke enhanced damages based on New Wave's willful and intentional conduct; and

18.    Grant Breeze Smoke any other relief as the Court deems necessary and proper.

### *DEMAND FOR JURY TRIAL*

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Breeze Smoke demands a trial by jury on all issues present in this civil action.


Dated:  September 19, 2024            Respectfully submitted,

_/s/  Jeffrey K. Lamb_____
Jeffrey K. Lamb (P76738)
HONIGMAN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506

48

Telephone:  313-465-7000
Facsimile:  313-465-8000
jlamb@honigman.com
*Attorneys for the Plaintiff*

Yafeez S. Fatabhoy (P83064)
Amanda M. Blackburn (P81687)
HONIGMAN LLP
315 East Eisenhower Parkway
Ann Arbor, MI 48108-3330
Telephone:  734-418-4217
Facsimile:  734-418-4218
yfatabhoy@honigman.com
ablackburn@honigman.com
*Attorneys for the Plaintiff*

49