UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BREEZE SMOKE LLC,

     Plaintiff,

                                 Case No. 24-cv-12467

v.                                Hon. Matthew F. Leitman

NEW WAVE ENTERPRISE LLC,

     Defendant.

_____/

### ORDER (1) GRANTING PLAINTIFF BREEZE SMOKE LLC'S MOTION FOR PRELIMINARY INJUNCTION (ECF No. 24) AND (2) PRELIMINARILY ENJOINING DEFENDANT NEW WAVE LLC

     This action arises out of a trademark dispute between Plaintiff Breeze Smoke LLC and Defendant New Wave Enterprise LLC. Now before the Court is Breeze Smoke's motion for a preliminary injunction prohibiting New Wave from using certain marks in connection with the sale and marketing of nicotine-delivery and tobacco-related products. (*See* Mot., ECF No. 24.) For the reasons explained below, the motion is **GRANTED**, and New Wave is preliminarily enjoined from using the marks described below on the terms described below.

## I

### A

     Breeze Smoke is a Michigan limited liability company that manufactures, distributes, and sells "electronic nicotine delivery systems ("ENDS"), or vaping

1

products[,] throughout the United States." (Second Am. Compl. at ¶¶ 1, 6, ECF No. 26, PageID.2028, 2032.)   In connection with those products, Breeze Smoke uses "marks containing the term 'BREEZE' as the dominant and distinctive element." (*Id.* at ¶ 14, PageID.2035.)   Breeze Smoke owns "several" United States Trademark Registrations for its "BREEZE and BREEZE formative marks. (*Id.* at ¶ 18, PageID.2038-2040.)   The Court will refer to these marks as the "Breeze Smoke Marks."

New Wave is a New Jersey limited liability company. (*See* Counterclaim at ¶ 1, ECF No. 33, PageID.2539.)   New Wave appears to be in the business of selling "hookah," "hookah accessories," "e-hose[s]," "e-hookah[s]," "vapes," and "e-cigarettes." (Abdellatif Dep. at 72:10-11, 206:19-24, 209:4-14, 298:7-10, 303:23-304:11, PageID.2939, 2973, 2996-2997.)   New Wave also, recently, expanded its products to include "nicotine pouches." (*Id.* at 294:23-295:7, 296:21-23, 298:7-14, ECF No. 41-4, PageID.2995-2996.)   Some of New Wave's products directly compete with those sold by Breeze Smoke, and most, if not all, of New Wave's products bear some form of the mark "C-BREEZE." (*Id.* at 304:1-11, PageID.2997.) The Court will refer to these marks as the "New Wave Marks."

## B

In this action, Breeze Smoke alleges that New Wave infringed the Breeze Smoke Marks by using the "confusingly similar" New Wave Marks on "vapes" and

"nicotine pouches" that are "closely related to goods Breeze Smoke currently offers and intends to offer in connection with" the Breeze Smoke Marks. (Second Am. Compl. at ¶¶ 2-4, ECF No. 26, PageID.2029-2030.)  Breeze Smoke filed this action against New Wave asserting claims of federal trademark infringement, federal and common law unfair competition, and several related state-law tort claims. (*See* Compl., ECF No. 1; Second Am. Compl., ECF No. 26, PageID.2064-2073.)  Breeze Smoke also seeks a declaratory judgment related to the ownership of the disputed Breeze Smoke Marks. (*See id.*, PageID.2073-2075.)

On February 13, 2025, Breeze Smoke filed a motion for preliminary injunction seeking to "enjoin[] New Wave from using" the New Wave Marks. (Mot., ECF No. 24, PageID.1660.)  After a period of limited expedited discovery, Breeze Smoke filed a supplemental brief in support of its motion. (*See* Supp. Br., ECF No. 40.)  New Wave did not respond to the motion or the supplemental brief by the deadlines set by the Court.  Nor did it attend the hearing on the motion.  Instead, after the close of business on the night before the hearing, New Wave filed a motion to adjourn the hearing and to extend the deadline for responding to Breeze Smoke's injunction-related filings. (*See* Mot., ECF No. 44.)  New Wave sought that relief on the basis that its attorney was dealing with an urgent medical issue. (*See id.*)  The Court denied the motion for the reasons explained in detail on the record on May 9, 2025.  Because New Wave failed to respond to the motion and did not attend the

hearing, the record contains no argument from New Wave opposing Breeze Smoke's showing in support of its request for injunctive relief.

## II

When determining whether to grant a preliminary injunction, a district court must apply the following four-part test:

> (1) whether the moving party has a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 717 (6th Cir. 2003).

## III

For the reasons explained below, the Court concludes, based on the evidence currently in the record, that all four of the injunction factors weigh in favor of granting a preliminary injunction.

## A

The Court begins with Breeze Smoke's likelihood of success on the merits. To state a claim for federal trademark infringement, a defendant "must allege facts establishing that (1) [he] owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). At this stage of the proceedings,

it appears that the second and third elements – use and confusion – are not in dispute. Indeed, New Wave admits that the New Wave Marks are (at least) substantially similar to the Breeze Smoke Marks and that competing use of those marks is likely to cause confusion. (*See* Counterclaim at ¶¶ 23, 29, ECF No. 33, PageID.2542-2543, alleging New Wave's use of the New Wave Marks and acknowledging that those marks are "confusingly similar" to the Breeze Smoke Marks; *see also* 2/14/2025 Tr., ECF No. 30, PageID.2504, acknowledging that the primary issues in dispute relate to which party has enforceable rights in the marks at issue.)

With respect to ownership, Breeze Smoke has presented evidence that, "[f]or years and since well-prior to New Wave's . . . use," it had "continuously used [the Breeze Smoke Marks] in connection with electronic cigarettes and vaping products[.]" (Haddad Decl. at ¶ 7, ECF No. 24-1, PageID.1664.) Breeze Smoke also "owns several United States Trademark Registrations for [the Breeze Smoke Marks]." (*Id.* at ¶ 10, PageID.1667-1670.) That evidence is sufficient to support a finding that Breeze Smoke has enforceable ownership rights in the Breeze Smoke Marks. *See Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991) (holding that "ownership rights flow only from prior appropriation and actual use in the market"); 15 U.S.C. § 1115(a) (registration of a mark is "prima facie evidence of . . . the registrant's ownership of the mark[.]").

While New Wave has not yet offered argument opposing Breeze Smoke's claim of ownership, it appears that New Wave may contend that Breeze Smoke is precluded from claiming ownership in the Breeze Smoke Marks because New Wave was "first in use" – that is, that New Wave used the New Wave Marks in commerce before Breeze Smoke used the Breeze Smoke Marks. (*See* 2/14/2025 Tr., ECF No. 30, PageID.2504.)  To that end, New Wave's owner testified that New Wave began using the New Wave Marks in 2014. (*See* Abdellatif Dep. at 72:10-11, ECF No. 41-4, PageID.2939.)

The problem for New Wave is that even if it could establish that it used the New Wave Marks in commerce prior to Breeze Smoke's use of the Breeze Smoke Marks (a point that the Court need not and does not resolve now), New Wave's claim that Breeze Smoke cannot claim ownership of the Breeze Smoke Marks would still likely fail on the evidence currently before the Court because that evidence tends to show that New Wave abandoned any right it had in the New Wave Marks.  As relevant here, a mark is abandoned "[w]hen its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127.  A party that abandons its marks loses ownership rights in those marks and the marks can therefore be registered by a new user. *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013).  To prove that a mark has been abandoned, "a party must demonstrate both non-use and intent not to resume use." *Yellowbook*, 708 F.3d at 848; 15 U.S.C. § 1127.  "Intent not to

resume may be inferred from circumstances." 15 U.S.C. § 1127.  And there is a "three-year statutory presumption for abandonment." *Yellowbrook*, 708 F.3d at 848. Under that presumption, "[n]onuse [of a mark] for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127.

The evidence currently in the record establishes a likelihood that New Wave abandoned any ownership rights it may have had in the New Wave Marks.  During discovery, Breeze Smoke served New Wave with document requests seeking, among other things, "[a]ll documents and communications demonstrating [New Wave's] date of first use of the [New Wave Marks] in connection with the promotion, offer or sale of any good or service" and "[a]ll purchase and sales records relating to each product or service [New Wave] has ever purchased or sold in connection with [any mark or designation comprised of or containing the term 'Breeze' or other term that is similar to 'Breeze' in sight or sound.]." (Proposed Requests for Production, ECF No. 25-2, PageID.2008, 2013, 2015.)  In response, New Wave did not timely produce any documents reflecting any sales of products bearing the New Wave Marks between March 2015 and December 2019 – a period of roughly four and one-half years.  The absence of such documentation strongly suggests that New Wave was not using the New Wave Marks during that period.  Indeed, it stands to reason that if New Wave was using the New Wave Marks in commerce during that period, it would have sales records to reflect that use.  Other documents produced by New

Wave further underscore that point.  New Wave *did* produce documents purporting to reflect sales of products bearing the New Wave Marks both before March of 2015 and after December 2019.  That production suggests that New Wave does maintain historical records for product sales that it has made and gives rise to an inference that if New Wave had made sales of products bearing the New Wave Marks between March 2015 and December 2019, it would have records to prove those sales.  For all of these reasons, the evidence currently before the Court establishes a likelihood that New Wave did not use the New Wave Marks between March 2015 and December 2019, and that non-use gives rise to a presumption that New Wave abandoned any interest it may have had in those marks.

The evidence in the record is also insufficient to rebut that presumption. While New Wave's owner testified during his deposition that New Wave did make some sales of products bearing the New Wave Marks between 2015 and 2019 (*see* Abdellatif Dep. at 72:10-11, ECF No. 41-4, PageID.2939), it is difficult, if not impossible, to square that testimony with New Wave's inability to timely produce any documents reflecting those sales.  On this record, the Court finds the absence of documentary evidence of sales more persuasive than the testimony of New Wave's owner and finds that that testimony is likely insufficient to establish New Wave's use of the New Wave Marks in commerce between March 2015 and December 2019.

For all of these reasons, the Court concludes, based upon the evidence currently in the record, that Breeze Smoke will likely be able to show that New Wave abandoned any rights it may have had in the New Wave Marks by failing to use the marks between March 2015 and December 2019.  And because Breeze Smoke will likely be able to make that showing, New Wave is unlikely to be able to successfully challenge Breeze Smoke's claimed ownership in the Breeze Smoke Marks.  For all of these reasons, Breeze Smoke is likely to prevail on the merits.[1]

## B

The Court next turns to whether Breeze Smoke will suffer irreparable injury absent an injunction.  The Court concludes it would.  "[I]rreparable injury 'ordinarily follows when a likelihood of confusion or possible risk to reputation appears' from infringement or unfair competition." *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999) (quoting *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991)).  The harm "stems not from the actual quality of the goods . . . but rather from [the mark owner's] loss of control over the quality of the goods that bear [the] marks." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 382 (6th Cir. 2006).

---

[1] Breeze Smoke raises a host of other arguments as to why it will prevail on its claims.  The Court need not, and does not, reach or decide any of Breeze Smoke's other arguments here.

Here, as noted above, there seems to be no dispute that there is a likelihood of confusion between the Breeze Smoke Marks and the New Wave Marks.  And the evidence suggests that such confusion could be widespread because, according to New Wave's owner, New Wave is currently selling products bearing the New Wave Marks "everywhere." (Abdellatif Dep. at 294:23-295:7, ECF No. 41-4, PageID.2995.)  New Wave's owner further testified that New Wave has plans to "introduc[e] or manufactur[e]" "other products" using the New Wave Marks, but could not "share with anyone secrets in business." (*Id.* at 304:12-20, PageID.2997.) All of this evidence persuades the Court that absent a preliminary injunction, Breeze Smoke would suffer irreparable harm from New Wave's use of the New Wave Marks.

## C

The Court next considers whether issuance of the injunction would cause substantial harm to others.  As an initial matter, the Court does not believe that enjoining New Wave from using the New Wave Marks would harm any third parties. And while an injunction against use of the New Wave Marks "likely will result in some temporary inconvenience to [New Wave] and its customers, [Breeze Smoke's] interest in preserving its rights in its mark outweighs this potential for harm." *R.L. Polk & Co. v. INFOUSA, Inc.*, 230 F.Supp.2d 780, 796 (E.D. Mich. 2002). Moreover, it appears that New Wave also sells hookahs and hookah parts – which

Breeze Smoke does not allege are infringing on its products – and therefore, issuing a preliminary injunction will not prevent New Wave from continuing sales of what may be a substantial portion of its business. (*See* Abdellatif Dep. at 83:3-7, 103:23-104:4, ECF No. 41-4, PageID.2942, 2947.)   For all of these reasons, the Court concludes that if and to the extent the injunction causes any harm to New Wave, that harm is outweighed by the harm to Breeze Smoke that an injunction will prevent.

## D

The Court finally turns to whether issuing a preliminary injunction will serve the public interest.  "The public interest is served by protecting a trademark holder's interest in its mark and by preventing consumer confusion." *R.L. Polk*, 230 F.Supp.2d at 796–97. *See also Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (finding in a trademark infringement case, "[i]t was in the public's interest to issue the injunction in order to prevent consumers from being misled."). Accordingly, the Court finds that issuing a preliminary injunction will serve the public interest.

## E

For all of the reasons explained above, the Court concludes that all four of the injunction factors weigh in favor of issuing a preliminary injunction against New Wave.  The Court will therefore issue an injunction on the terms set forth below.

11

## IV

The Court will not require Breeze Smoke to post a bond as security for the injunction.  "It is well established in this Circuit that it is within the district court's discretion to require the posting of security or not." *Wood v. Detroit Diesel Corp.*, 213 F. App'x 463, 472 (6th Cir. 2007).  The Court declines to require Breeze Smoke to post a bond here because, among other things, New Wave has not yet presented any evidence that the entry of the requested injunction will cause New Wave to suffer economic damages. *See Appalachian Reg'l Healthcare, Inc. v. Coventry Health and Life Ins. Co.*, 714 F.3d 424, 432 (6th Cir. 2013) (explaining that "[a]lthough no rule formally requires it, a party seeking a security bond regularly estimates the damages it will suffer if it complies with a preliminary injunction.").  New Wave's failure to oppose the request for injunctive relief further weighs against requiring Breeze Smoke to post a bond.  The Court is not persuaded that a bond is necessary in this case.

## V

For all of the reasons explained above, Breeze Smoke's motion for preliminary injunction (ECF No. 24) is **GRANTED** and New Wave is enjoined as follows:

New Wave and any of its members, officers, agents, servants, employees, attorneys, affiliates, distributors, successors, or other persons who are in active

concert or participation with New Wave are enjoined and restrained, pending further order from this Court, from directly or indirectly importing, manufacturing, distributing, offering, selling, advertising, marketing, or promoting any electronic nicotine delivery systems products, vaping products, nicotine pouch products, or other related tobacco products or smoking-alternative products using the mark C-BREEZE, BREEZE, or any mark that is confusingly similar to BREEZE.[2]

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  May 13, 2025

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 13, 2025, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126

---

[2] As the Court noted above, because New Wave failed to file a response to Breeze Smoke's motion and failed to appear at the hearing on the motion, the Court is entering the injunction without any argument or evidence from New Wave.   As the Court explained on the record on May 9, 2025, and noted in an order entered that same day (*see* Order, ECF No. 46), the Court is willing to entertain argument from New Wave that it should be permitted to present a filing in opposition to the injunction and to seek to have the injunction dissolved.  The Court will entertain such argument at a to-be-scheduled status conference.